THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SALOMÉ AGUAYO-BECERRA,<br><br>Plaintiff,<br><br>v.<br><br>FLSMIDTH, INC., a Delaware company,<br><br>Defendant. | CASE NO. C15-1561-JCC<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant FLSmidth, Inc.'s ("FLS") motion for summary judgment (Dkt. No. 89) and motion to strike (Dkt. No. 95). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motions for the reasons explained herein.

## I. BACKGROUND

Plaintiff Salome Aguayo-Becerra sustained serious injuries when he attempted to take a cement sample by inserting his hand into a maintenance port on an operating screw conveyor at Ash Grove Cement Company ("Ash Grove"). (Dkt. No. 17 at 3–4.) The port was located on the side of a horizontal screw conveyor, connected to an upper conveyer by a vertical transfer chute. (*See* Dkt. No. 89 at 8.) The correct sampling port was located above the subject port on the side of the chute. (*Id.*) Plaintiff brought this product liability suit against Ash Grove and the parties who designed and manufactured the screw conveyor. (Dkt. Nos. 1-1 at 4, 5–6; 38 at 4–17.) Ash

Grove was dismissed under the parties' arbitration agreement. (Dkt. No. 12.) After further discovery, all defendants other than FLS were voluntarily dismissed. (Dkt. Nos. 17, 37, 57, 87.)

FLS and its subcontractors designed, supplied, and installed a new cement production line at Ash Grove between 1989 and 1993. (Dkt. No. 80 at 2–3.) FLS project drawings did not include the port into which Plaintiff inserted his hand. (*See* Dkt. Nos. 89 at 3, 92 at 3.) Nor did the drawings show the transfer chute and sampling port currently located above the subject port. (Dkt. No. 93-7 at 2.) However, Plaintiff asserts that FLS deviated from its original design and added the chute and ports during plant construction. (Dkt. No. 92 at 1, 10.) FLS maintains that the port did not exist when it completed construction at Ash Grove and moves for summary judgment on this basis. (Dkt. No. 89 at 3.)

## II. DISCUSSION

### A. FLS's Motion to Strike

As an initial matter, the Court will address FLS's motion to strike Plaintiff's expert, Alan Werner's, November 13, 2017 declaration. (Dkt. No. 95 at 2.) This declaration is attached as an exhibit to Plaintiff's response to FLS's summary judgment motion. (Dkt. No. 93-18.)

Absent a stipulation or court order, expert disclosures must be made at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D)(i). Disclosure of an expert witness "must be accompanied by a written report" containing "a complete statement of all opinions the witness will express . . . ." *Id*. 26(a)(2)(B). The 90-day deadline does not apply if the disclosure "is intended solely to contradict or rebut evidence on the same subject matter identified by [another party's expert]" and occurs "within 30 days after the other party's disclosure." *Id*. 26(a)(2)(D)(ii). "If a party fails to provide information . . . as required by Rule 26(a) . . . [it] is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." *Id*. 37(c)(1).

Werner's November 13, 2017 declaration was not timely disclosed. Trial in this case is set for January 29, 2018. The declaration contains new observations and opinions implicating

FLS and not raised in Werner's July 2017 declaration. (*Compare* Dkt. No. 93-18 *with* Dkt. No. 93-5.) Plaintiff disclosed new opinions in response to a dispositive motion, not to rebut evidence identified within the prior 30 days. *See* Fed. R. Civ. P. 26(a)(2)(D); (Dkt. No. 92 at 9).[1]

Late disclosure of Werner's declaration was neither justified nor harmless. Werner inspected the Ash Grove plant on October 4, 2017, and Plaintiff could have disclosed new opinions based on this inspection within the 90-day window, as required by Rule 26(a). (*See* Dkt. No. 92 at 9.) Plaintiff's late disclosure limited FLS's ability to depose Werner and to rebut opinions contained in the new declaration.

For the foregoing reasons, the Court GRANTS FLS's motion to strike (Dkt. No. 96 at 2). Werner's November 13, 2017 declaration (Dkt. No. 93-18) is hereby STRICKEN.

### B. Summary Judgment

A Court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce affirmative evidence but may simply point to the absence of evidence supporting the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

"If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). A plaintiff must "produce at least some significant probative evidence tending to support" allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d

---

[1] FLS's April 2017 responses to interrogatories put Plaintiff on notice that FLS denies designing or installing the subject port and chute. A September 29, 2017 deposition of Garry Silver raised the issue of his design for "covers" added during plant construction. Werner opines on these issues for the first time in his November 13, 2017 declaration. (*See* Dkt. No. 95 at 5–6.)

ORDER ON MOTION FOR SUMMARY
JUDGMENT
C15-1561-JCC
PAGE - 3

959, 963 (9th Cir. 1990). A court must grant summary judgment if, "after an adequate time for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### C. Plaintiff's Product Liability Claims

#### 1. Washington Product Liability Act

The Washington Product Liability Act ("WPLA") is the exclusive remedy for product liability claims under Washington law. *Washington Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1203-04 (Wash. 1989). The WPLA imposes liability on a manufacturer for a claimant's harm proximately caused by a product "not reasonably safe. . . *at the time of manufacture*," due to design defect or inadequate warnings. Wash. Rev. Code § 7.72.030(1) (emphasis added). Alternatively, a manufacturer can be held liable for harm proximately caused by a product "not reasonably safe in construction" if, "*when the product left the control of the manufacturer*, [it] deviated in some material way from the design specifications." *Id*. § 7.72.030(2) (emphasis added). The WPLA defines "manufacturer" as a "product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale." *Id*. § 7.72.010(2). Here, to prevail on its WPLA claim, Plaintiff must show that FLS designed, made, constructed, or oversaw the installation of the subject port that caused his injury.

#### 2. Evidence That FLS Designed, Made, or Installed the Subject Port

FLS carries its initial burden of showing the absence of any genuine factual dispute over whether it was responsible for the subject port. FLS points to the absence of evidence that it designed or installed the subject port and presents evidence that the port was not part of its original design or added during plant construction. (Dkt. Nos. 89 at 5–9, 17–19; 90-3 at 11–13.) This showing shifts the burden to Plaintiff to produce "some significant probative evidence" to support its allegations to the contrary. *See Leisek*, 278 F.3d at 898; *Smolen*, 921 F.2d at 963.

Plaintiff supports its claim by piecing together inferences drawn from depositions and declarations of FLS's 30(b)(6) witness, Steve Harrington, FLS engineer Garry Silver, and Ash Grove employee, Michael Begley. Harrington testified that an instruction on FLS's design to "field fit as necessary" indicated that "tweaks" to the design may be made during project installation. (Dkt. No. 93-6 at 8.) Silver testified that, as a new engineer, he was assigned to design a cover for the "shaft and the miltronics motion sensor" on the end of a screw conveyor. (Dkt. No. 92 at 8–9.) The cover was an in-the field addition not in original project designs. (*Id.*) Silver faxed his design to project leaders before leaving the worksite. (*Id.*) Finally, Begley testified that adding the chute and ports after initial installation would have been a large project requiring a change in the incline of a heavy conveyor. (Dkt. No. 93-14 at 4.) Begley declared that after a "diligent search" he found no record of such a project at Ash Grove. (Dkt. No. 97-7 at 2–3.) Plaintiff argues that from this evidence, a reasonable juror could infer that the port was added during construction. Plaintiff's operative theory is that FLS misunderstood Silver's design and implemented it by installing the subject port—and assumedly the adjacent chute, hopper, and sampling port also absent from original project drawings. (*See* Dkt. No. 92 at 7–18.)

Plaintiff's suggested inferences are contradicted by evidence regarding FLS's installation of the plant machinery. Harrington oversaw FLS's project at Ash Grove and was the last engineer onsite. (Dkt. No. 95 at 10.) He testified that the subject ports and chute did not exist when FLS left the plant. (Dkt. Nos. 93-6 at 6, 95 at 10.) Plaintiff's only response is that Harrington is "not to be believed." (Dkt. No. 92 at 18.) FLS also provides evidence that it installed an automated sampling system at Ash Grove that is no longer in operation. (Dkt. No. 89 at 15.) With this system in place, there would have been no need for a manual sampling port at the time of construction. (*Id.*) Furthermore, FLS offers evidence rebutting Plaintiff's theory that Silver's design was implemented as the subject port: an attestation by Harrington that, under his supervision, Silver's cover design was implemented as intended, and photographs showing the covers installed on 11 conveyors not at issue in this suit. (Dkt. Nos. 97 at 4, 97-4.) Finally, FLS

points out that Plaintiff relies solely on Begley's personal search to establish that Ash Grove has no record of installation of the subject port; Plaintiff did not depose or serve discovery on Ash Grove. (Dkt. No. 95 at 11.)

Plaintiff fails to make a showing sufficient to establish that FLS designed, made, or installed the subject port—an essential element of his case for which he will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Conclusory statements and unsupported conjecture are not enough to survive summary judgment. *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### 3. Plaintiff's Strict Liability Argument

Plaintiff appears to argue in the alternative that he need not establish FLS's responsibility for the subject port for the Court to apply strict liability. He reasons that strict liability apportions the cost of an injury to a manufacturer and does not require a plaintiff to prove fault. (Dkt. No. 92 at 14) (citing generally *Martin v. Abbott Labs*, 689 P. 2d 368 (Wash. 1984)). Plaintiff's argument for strict liability relies on the following facts: (1) FLS was in the chain of distribution and installed the original screw conveyor, (2) Plaintiff was not at fault, and (3) Plaintiff has uncovered no evidence "that anybody else [was] subsequently responsible." (Dkt. No. 92 at 5, 6, 22.)

These facts are not sufficient to establish strict liability under Washington law. Plaintiff relies on cases holding distributors strictly liable based on pre-WPLA law. *See Seattle-First Nat. Bank v. Taubert*, 542 P.2d 774, 776 (Wash. 1975); *Zamora v. Mobil Oil Corp.*, 704 P.2d 584, 588 (Wash. 1985). These cases also involved products that were defective when they passed through distributors' hands. *Id*. Plaintiff additionally cites tobacco and asbestos cases to argue for a diminished need to prove causal responsibility and the ability to establish that a product was defective by showing it did not conform to consumer safety expectations. (Dkt. No. 92 at 13.) (citing generally *Falk v. Keene Corp.*, 782 P.2d 974 (Wash. 1989); *Lockwood v. A C & S*, 744 P.2d 605 (Wash. 1987)). But none of these cases, or others Plaintiff cites, remove a claimant's

burden to show that the defendant designed, made, or constructed a defective product or that the defect existed when the product left the defendants' control.

Strict liability under the WPLA still requires Plaintiff to establish that FLS was involved in the design or installation of the subject port that caused his injury or that the port existed when the screw conveyor left FLS's control.

## III. CONCLUSION

For the foregoing reasons, Defendant FLSmidth's motion to strike (Dkt. No. 95) and motion for summary judgment (Dkt. No. 89) are GRANTED.

DATED this 30th day of November 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY
JUDGMENT
C15-1561-JCC
PAGE - 7